## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| In re:<br><br>LUKE LEON TOOLEY,<br><br>Debtor | Chapter 7<br>Case No. 19-41928-CJP |
| MICHAEL GHOSH,<br><br>Plaintiff<br><br>v.<br><br>MARY BAO, TRUSTEE OF THE LUKE L. TOOLEY, JR. REVOCABLE TRUST, AND LUKE LEON TOOLEY,<br><br>Defendants | AP No. 20-04023-CJP |

## MEMORANDUM OF DECISION

Before the Court is the *Motion for Judgment on the Pleadings on Counts IV and V of the Complaint Seeking Denial of Debtor's Discharge* (Dkt. No. 27), as supplemented by Docket Nos. 53 and 60 (collectively, the "Rule 12(c) Motion") filed by the plaintiff Joseph H. Baldiga (the "Trustee"), the Chapter 7 Trustee of the bankruptcy estate of Luke Leon Tooley (the "Debtor"), which Rule 12(c) Motion the Court has converted (Dkt. No. 70) (the "Conversion Order") to a motion for summary judgment (the "Motion") under Rule 56 of the Federal Rules of Civil Procedure (the "Rules"), as made applicable to these proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Michael Ghosh ("Ghosh" or "Plaintiff") has been substituted, with the Debtor's assent, as the plaintiff in this adversary

proceeding in place of the Trustee and the moving party with respect to the Motion.[1] Pursuant to the Motion, the Plaintiff seeks summary judgment on Counts IV and V of the complaint (the "Complaint") in which the Plaintiff objects to the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A) and (a)(4).[2] Upon consideration of the Rule 12(c) Motion, the *Objection to Motion for Judgment on the Pleadings and Cross-Motion For Judgment in Favor of Luke Leon Tooley* (Dkt. No. 36) (the "Objection"), the supplemental memorandum thereto (Dkt. No. 58) (the "Supplemental Memorandum") filed by the Debtor; the opposition to the Objection (Dkt. No. 39) and reply to the Supplemental Memorandum (the "Reply") (Dkt. No. 59) filed by the Trustee; the Plaintiff's *Supplement to the Summary Judgment Record and Statement of Material Facts of Record* (Dkt. No. 91) (the "Supplement and Statement of Material Facts"); the Plaintiff's Designation of Evidence (Dkt. No. 92) (the "Designation"); and the Debtor's *Motion for Leave to File Late Response* (Dkt. No. 93) (the "Motion for Leave"), which the Court has granted in part and denied in part per the Order at Docket No. 94.[3] As will be discussed below,

---

[1] *See* Order (Dkt. No. 79) granting the *Motion to Substitute Creditor, Michael Ghosh, For Joseph H. Baldiga, Chapter 7 Trustee of the Bankruptcy Estate of Luke Leon Tooley filed by Ghosh* (Dkt. No. 73).

[2] Unless otherwise noted, all section references herein are to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended (the "Bankruptcy Code").

[3] Neither party complied with MLBR 7056-1, which incorporates by reference Local Rule 56.1 of the United States District Court for the District of Massachusetts, which states:

> Motions for summary judgment shall include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation. Failure to include such a statement constitutes grounds for denial of the motion. Opposition to motions for summary judgment must be filed, unless the court orders otherwise, within 21 days after the motion is served. *A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation.* Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving

I have relied on competent evidence in the record and other facts which have not been disputed by the Debtor in making my determination. For the reasons stated herein, I GRANT the Motion as to Count IV and will enter judgment in favor of the Plaintiff, denying the Debtor's discharge pursuant to § 727(a)(2)(A).

## BACKGROUND

The Debtor filed a petition for relief under Chapter 7 of the Code on December 11, 2019 (the "Petition Date"), and the Trustee commenced this adversary proceeding by filing a five count complaint (the "Complaint"), consisting of: Count I, Avoidance of Transfers Pursuant to § 548(a)(1)(A); Count II, Avoidance of the Transfers Pursuant to § 544(b) and M.G.L. ch. 109A; Count III, Disallowance of Any and All Claims the Defendant Bao May Have Against the Estate; Count IV, Denial of Discharge Pursuant to § 727(a)(2)(A); and Count V, Denial of Discharge Pursuant to § 727(a)(4). The Trustee settled Counts I, II, and III as to the other defendant in the adversary proceeding, Mary Bao as trustee of the Luke L. Tooley, Jr. Revocable Trust (the "Trust"), and filed a *Notice of Voluntary Dismissal of Adversary Proceeding Pursuant to Fed. R. Bankr. P. 7041 as to Mary Bao, Trustee of The Luke L. Tooley, Jr. Revocable Trust, Only, and as to Counts I, II and III Only* (Dkt. No. 68). The Trustee filed his Rule 12(c) Motion as to Counts IV and V against the Debtor, arguing that judgment should enter on the pleadings with respect to those counts.

---

party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties. Unless the court orders otherwise, the moving party may file a reply within 14 days after the response is served.

L.R., D. Mass. 56.1 (emphasis added).

3

With respect to Count IV of the Complaint under § 727(a)(2)(A), the Trustee asserted that judgment on the pleadings was appropriate, in pertinent part, because at the 341 Meeting the Debtor admitted to transferring certain properties to the Trust within one year of the Petition Date for the purpose of preventing Ghosh from reaching those assets. *See* Mot. ¶¶ 6, 10, 11 (Dkt. No. 27); Tr. 5, 61.[4] The properties the Debtor transferred to the Trust consisted of two parcels of real estate with improvements located at 1106 East Monroe Street, Kokomo, Indiana, 46901 and 1112 East Taylor Street, Kokomo, Indiana, 46901 (together, the "Kokomo Properties"), and seven motor vehicles of various types. *See* Mot. ¶ 7 (Dkt. No. 27); Obj. ¶ 7 (admitting all transfers made to the Trust and all values of the properties, as alleged by the Trustee).

The Trustee also moved for judgment on the pleadings for Count V under § 727(a)(4) alleging that, according to the Debtor's testimony at the 341 Meeting, the Debtor confirmed he made false oaths in both his original and amended schedules regarding his interest in financial accounts and retirement or pension accounts, his gross monthly wages and his employment income in the year preceding his filing and other sources of income in the three years preceding his filing, his monthly expenses, property transfers, and his ownership interest in business

---

[4] The *Further Supplement to the Chapter 7 Trustee's Motion for Judgment on the Pleadings on Discharge Counts (Counts IV and V)* (Dkt No. 60) is an affidavit of the Trustee (the "Affidavit"), wherein the Trustee attested that the attached transcript (the "Transcript") is a "true and accurate transcription" to the best of his knowledge based on his personal review of the contemporaneous recording of the § 341 meeting of creditors held on March 11, 2020 (the "341 Meeting"). Aff. ¶ 5. The Trustee's office prepared the Transcript. *Id.* Following the Debtor's initial objections to the authenticity of the Transcript, and having given the Debtor an opportunity to review the Transcript for accuracy, Debtor's counsel filed a statement (Dkt. No. 90) that assents to the Transcript's entry into the summary judgment record, despite what he characterized as certain unspecified grammatical changes or typographical errors of the transcriptionist. Debtor's counsel deemed any errors "inconsequential," *see* Stmt. (Dkt. No. 90), and thus I will consider it as part of the evidentiary record.

entities in the four years preceding his filing. Mot. ¶¶ 12, 13 (Dkt. No. 27).

Ghosh's claims against the Debtor relate to certain collection efforts by Ghosh against his former wife, Meleeka Clary. After obtaining certain judgments against Clary in a lawsuit filed in Hamilton County Superior Court in Indiana (the "Indiana Court"), Cause No. 29D03-0908-DR-2586, Ghosh filed another complaint[5] against Clary and a related business entity, MCM Fashions, LLC ("MCM"), on July 11, 2017 in the Indiana Court (the "2017 Complaint"), Cause No. 29D02-1707-PL-006437 (the "Indiana Litigation"), seeking to set aside fraudulent transfers and asserting veil piercing and alter ego claims in order to collect from Clary on his earlier judgments. *See* Obj. 3 and accompanying exhibits. The 2017 Complaint alleged that Clary fraudulently transferred certain property to MCM, that MCM was her alter ego, and, thus, the transfers to MCM should be declared void so that Ghosh could execute his judgment against the assets. *Id.* The Debtor was not an original party to the lawsuit between Ghosh and Clary. *Id.* Ghosh amended the 2017 Complaint (the "Indiana Amended Complaint")[6] on August 27, 2018 to include the Debtor as a defendant, among others, alleging that he was personally liable for the judgments against Clary as the sole manager of TCD Productions, LLC ("TCD"), the entity to which Clary allegedly transferred or caused to be transferred many of her personal assets and all of MCM's assets (consisting largely of motor vehicles). *Id.* The Indiana Court entered a default judgment against the Debtor on May 1, 2019 in the amount of $84,567.13, plus punitive damages of $75,000, plus interest and costs of the action, including reasonable attorneys' fees

---

[5] The Debtor attached this verified complaint to his Objection, beginning on page 14 of that document.

[6] The Debtor also attached a copy of the Amended Complaint to his Objection, beginning on page 20 of that document.

5

(the "Default Judgment").[7]  *See* Compl. ¶ 12, Ex. B.

In the Objection, the Debtor argues that the Trustee impermissibly relies on the Default Judgment to establish that the Debtor's transfers of certain real estate were fraudulent as to Ghosh, because Ghosh did not claim that the Debtor acted fraudulently in the Indiana Amended Complaint and the sole basis of the Indiana Amended Complaint was the various transfers of motor vehicles.  Obj. 4.  Additionally, the Debtor notes that Ghosh never alleged that the transfers of real estate were fraudulent in the Indiana Amended Complaint.  *Id.*  Therefore, the Debtor argues that both Ghosh and the Trustee are either collaterally or judicially estopped from making those arguments now.[8]  *Id.* at 3-4.  The Debtor further argues that, even if the Trustee is not estopped, there is no evidence of fraudulent intent.  *Id.*  He contends that, at the time he formed the Trust, he was not a defendant in the Indiana Litigation, and therefore the testimony at the 341 Meeting is not a sufficient basis to establish that the transfers were made with actual fraudulent intent as to Ghosh, or any other creditor.  *Id.* at 6 and ¶¶ 6, 7.

Regarding Count V, the Debtor acknowledges "that the original schedules and statements

---

[7] The Indiana Amended Complaint refers to the Debtor as Luke L. Tooley, Jr.  In his voluntary petition (the "Petition"), the Debtor does not list a suffix and there is no response to Question 2 of the Petition, "All other names you have used in the last 8 years."  In his Objection, among other places on the record, the Debtor has confirmed that he is also been referred to as Luke L. Tooley, Jr. by admitting Ghosh had obtained a Default Judgment against him and that the Debtor transferred certain "Trust Assets," as defined in the Complaint in this adversary proceeding to the Trust, Obj. ¶¶ 4, 7, and stating "Luke Leon Tooley, Jr., (the debtor herein)" was not a named defendant in the 2017 Complaint, *Id.* at 4.

[8] I decline to apply res judicata or estoppel to the Default Judgment (because the "real estate" claims were not asserted in the Indiana Litigation) as invited by the Debtor to preclude the Trustee's, now Ghosh's, assertion of fraudulent conveyance claims relating to the Kokomo Properties in the context of this § 727(a)(2)(A) action.  An objection to discharge is distinct from the claims asserted in the Indiana Litigation, and other than raising the issue, the Debtor makes no argument and cites no authority for the proposition that Ghosh must have asserted those claims in the Indiana Litigation or that his failure to do so could operate to preclude a discharge objection by a bankruptcy trustee or Ghosh.

were rife with errors and omissions[,]" but asserts that any errors in the original documents were a result of "misunderstanding and legal error on his part and the part of his original counsel," and that he made a good faith effort to amend them. Obj. 7. The Debtor asserts that the Trustee has not sufficiently established that any of the Debtor's false statements were material to the administration of the estate, and many errors from his original schedules were due to the Debtor's original counsel's clerical mistakes, in addition to legal error, and that the Debtor believed the representations were truthful and accurate at the time they were made. *Id.* at 8. The Debtor notes "there still may be some errors[,]" but suggests they are immaterial. *Id*. at 7. According to the Debtor, any omissions or errors that remain in his amended schedules and statement of financial affairs were made without the requisite intent and were an oversight. *Id.* As a result, the Debtor argues judgment should not enter as to Count V.

Following a preliminary hearing on the Rule 12(c) Motion, I requested further briefing on the issue of whether Ghosh was a creditor at the time the Debtor transferred his assets to the Trust. Ultimately, at the Debtor's suggestion and following a further hearing and the supplemental briefing, I converted the Trustee's Rule 12(c) Motion to one for summary judgment under Rule 56, as material facts contained in the pleadings alone appeared to be disputed.[9] The Trustee acknowledges that the Debtor established the Trust on March 8, 2018, about four months prior to Ghosh amending his Indiana Complaint to add the Debtor as a defendant on August 27, 2018, *see* Mot. ¶ 5 (Dkt. No. 53); Obj. 2 and accompanying exhibits. but the parties do not dispute that the Debtor transferred the two Kokomo Properties to the Trust in January of 2019, long after Ghosh amended the Indiana Complaint in August of 2018 to add

---

[9] *See* Conversion Ord. 4.

the Debtor as a defendant.[10] *See* Mot. ¶ 10 (Dkt. No. 36); Obj. 2. The Trustee, and now Ghosh, argues that under either Indiana law or the Code, Ghosh was a creditor holding a claim at the time of the transfer, and the Debtor's stated purpose of the transfer was to place the property out of Ghosh's reach. *See* Mot. 2-3 (Dkt. No. 53); Tr. 5-7, 61-62.

In response, the Debtor argues that he has the right to dispute the Default Judgment's res judicata effect because the Indiana Amended Complaint does not allege any wrongful acts committed by him, and at worst it only shows that the Debtor was the recipient of a fraudulent transfer. Suppl. Mem. 2. The Debtor also asserts that he did not meaningfully defend or participate in the Indiana Litigation. *Id.* The Debtor argues that he did not owe Ghosh a debt until the Default Judgment entered, which was after the Debtor transferred the Kokomo Properties to the Trust. *Id.* He contends that the controlling definition for this analysis should be "debt," as defined by § 101(12) ("liability on a claim"), and not "claim." *Id.* Using that analytical framework, the Debtor acknowledges that Ghosh has a "claim," but argues that it has not ripened to a "debt" because the Debtor's liability on that claim can still be litigated in connection with this bankruptcy. *Id.* Finally, the Debtor asserts that he never stated under oath at the 341 Meeting that Ghosh specifically was suing him, nor did he specify who exactly was suing him at the time of the transfers, and because all inferences must be made in the Debtor's

---

[10] *See* Obj. 2 (identifying either January 15 and/or January 22 of 2019 as the dates two pieces of real estate were transferred to the Trust). *See generally* Suppl. & Stmt. of Material Facts, Ex. C (deed transfers of Kokomo Properties). I note that the documentary evidence of the deed transfers is less than clear, and each deed appears to have been recorded more than once. *See* Suppl. & Stmt. of Material Facts, Ex. C. However, as the parties have not set forth any legal argument nor established a factual dispute regarding the dates that the Debtor transferred the Kokomo Properties to the Trust, and indeed the Debtor himself states that real estate was transferred to the Trust in January of 2019, I am satisfied that these facts are undisputed. *Compare* Obj. 2 *with* Mot. ¶ 10 (Dkt. No. 27).

favor as the non-moving party, the Trustee cannot prevail on the current evidence.  *Id.*

After Ghosh was substituted as Plaintiff,[11] Ghosh filed a Statement of Material Facts and accompanying Designation for the summary judgment record, but filed no affidavits authenticating much of the documentary evidence.  *See generally* Suppl. & Stmt. of Material Facts; Designation.  As discussed in the Order on the Motion for Leave (Dkt. No. 94), the Debtor has only asserted in response to the Plaintiff's Supplemental Statement of Material Facts and Designation that the Plaintiff did not authenticate any of the documents designated as evidence, but has not denied the truth of the specific statements, provided his own statement of material facts, or submitted any additional evidence.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st Cir. 1994) (explaining "[i]t is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law").  "A genuine issue is one supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party.  Material facts are those having the potential to affect the outcome of the suit under the applicable law."  *Sampson Lumber Co., Inc. v. Tucci (In re Tucci)*, 462 B.R. 278, 282 (Bankr. D. Mass. 2011).  "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

---

[11] *See* Ord. dated 9/25/2020 (Dkt. No. 79).

9

*Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). As the Supreme Court noted, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. The party seeking summary judgment has the burden to demonstrate no genuine issue of material fact exists, and the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury [or, in this case, to the Judge as the finder of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

To grant summary judgment in favor of the Plaintiff on Count IV and deny the Debtor his discharge under § 727(a)(2)(A), the undisputed material facts must demonstrate that, "with intent to hinder, delay, or defraud a creditor," the Debtor "has ... transferred, or has permitted to be ... transferred, property of the debtor, within one year before the date of the filing of the petition." § 727(a)(2)(A). *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 445 F.3d 518, 522 (1st Cir. 2006); *Groman v. Watman (In re Watman)*, 301 F.3d 3, 7 (1st Cir. 2002). To prevail under § 727(a)(2)(A), a plaintiff must prove each element by a preponderance of the evidence. *Antognoni v. Basso (In re Basso)*, 397 B.R. 556, 562 (B.A.P. 1st Cir. 2008).

The Trustee also moved for summary judgment on Count V, § 727(a)(4), asserting that there is no genuine issue of material fact that the Debtor knowingly and fraudulently made a

10

false oath or account on his schedules and statements of financial affairs. In assessing this claim, a court must determine: (1) whether the debtor knowingly and fraudulently made a false oath (2) related to a material fact in the case. *See Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir. 1987); *Irish Bank Resolution Corp. Ltd. v. Drumm (In re Drumm),* 524 B.R. 329, 394 (Bankr. D. Mass. 2015) (citing *Tully,* but enumerating the claim as five separate elements consisting of the same requirements). Intent is an essential element, and a court should not deny a debtor discharge if a false statement or omission was simply a mistake, or if that error is technical. *See JP Morgan Chase Bank, N.A. v. Koss (In re Koss),* 403 B.R. 191, 211 (Bankr. D. Mass. 2009) (quoting *Gordon v. Mukerjee (In re Mukerjee),* 92 B.R. 627, 629 (Bankr. D.N.H. 1989)). Once the objecting party proves the oath is false, the burden shifts to the debtor "to come forward with evidence that he has not committed the offense charged" in order to avoid an inference that the statement was knowingly and fraudulently made. *See In re Mascolo,* 505 F.2d 274, 276 (1st Cir. 1974) (suggesting a burden-shifting scheme); *In re Tully,* 818 F.2d at 110 (further identifying the burden-shifting scheme).

## ANALYSIS

A. <u>Denial of Discharge Under § 727(a)(2)(A)</u>

The Debtor does not dispute that he held title to the Kokomo Properties and that he transferred the two Kokomo Properties to the Trust within a year of the Petition Date. As such, it appears that there are no material facts in genuine dispute as to the first three prongs of § 727(a)(2)(A). The Debtor disputes that Ghosh was a "creditor" at the time the Debtor transferred the Kokomo Properties to the Trust under § 727(a)(2)(A) and disputes that his testimony at the 341 Meeting establishes that he acted "with actual intent to hinder, delay, or

defraud a creditor." *See In re Marrama,* 445 F.3d at 522; Obj. 4-5.

The Debtor argues that Ghosh became his creditor when Ghosh's claim ripened into a "debt," defined by § 101(12) ("liability on a claim"), and because the Debtor incurred no liability to Ghosh until the Default Judgment entered May 1, 2019, Ghosh was not a creditor at the time the Debtor transferred the Kokomo Properties. *See* Suppl. Mem. 2. Ghosh asserts that he held a "claim," as defined in § 101(5)(A) and was a "creditor" under § 101(10) at the time of the transfers because, at a minimum, Ghosh had already filed the Indiana Amended Complaint to add the Debtor as a defendant in the Indiana Litigation at the time the Debtor transferred the Kokomo Properties. *See* Mot. ¶¶ 8, 9 (Dkt. No. 53).

I am not persuaded by the Debtor's argument. Section 727(a)(2)(A) provides that a debtor who transferred his or her property with intent to hinder, delay, or defraud a *creditor* is not entitled to a discharge. 11 U.S.C. § 727(a)(2)(A) (emphasis supplied). The Code defines a "creditor" as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A). The Code defines "claim" as a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). "State law usually determines whether a person has such a right [to payment]." *Midland Funding, LLC v. Johnson,* 137 S. Ct. 1407, 1411 (2017) (looking to state law to determine whether a debt collector had a "right to payment" under § 101(5)(A) in the

context of a debtor's allegations under the Fair Debt Collection Practice Act against that debt collector who filed of a proof of claim that acknowledged on its face that the debt was outside the statute of limitations). But in other contexts, courts have held that "[b]ecause contingent and unmatured rights of payment are 'claims' under the Bankruptcy Code, a right to payment that is not yet enforceable under non-bankruptcy law may be defined as a claim within section 101(5)(A) of the Bankruptcy Code." *In re Caldor, Inc.-NY*, 240 B.R. 180, 192 (Bankr. S.D.N.Y. 1999), *aff'd sub nom*, *Pearl-Phil GMT (Far E.) Ltd. v. Caldor Corp.*, 266 B.R. 575 (S.D.N.Y. 2001).

In the context of tort claims, a right to payment under Indiana law has been described as arising upon the occurrence of the "debt-generating event", when a party has sustained damages as a result of the tortious conduct, since there can be no tort without a harm. *See Cote v. Stuecker*, 547 F. App'x 778, 780 (7th Cir. Dec. 10, 2013) (mem.) (citing *Fogel v. Zell,* 221 F.3d 955 at 961 (7th Cir. 2000)). A person may be a "creditor" prior to entry of a judgment in their favor. For example, where a debtor transferred his property following an automobile accident, but prior to entry of a personal injury judgment, the Fifth Circuit Court of Appeals affirmed the bankruptcy court's denial of discharge under § 727(a)(2) and "decline[d] to hold that purposefully concealing property in anticipation of a known and imminent creditor's lawsuit should necessarily be somehow qualitatively different from concealing property after the judgment on that claim becomes final." *See Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552-53 (5th Cir. 1987) ("The claim 'arose' and [the plaintiff in a § 727 action] became a creditor for purposes of 11 U.S.C. § 101(9)(A) (defining creditor) when the accident occurred"); *O'Loghlin v. Cnty. of Orange,* 229 F.3d 871, 874 (9th Cir. 2000) ("we agree with the Eighth

13

Circuit that a claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim"). *Cf. Compagnone v. Compagnone (In re Compagnone)*, 239 B.R. 841, 844 n.3 (Bankr. D. Mass. 1999) (distinguishing *In re* Olivier on other grounds outside of the tort context and determining that a spouse engaged in a divorce proceeding was not a "creditor" holding a "claim" because any equitable rights she may have had from a divorce proceeding did not meet the definition of "claim" under the Code, since alimony or the equitable division of property "are not awarded for breach of performance"). "The legislative history of § 101(5) indicates that this definition [of "claim"] 'contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the Bankruptcy Court.'" *In re Compagnone*, 239 B.R. at 843 (internal citations omitted).

      Ghosh alleged in the Indiana Amended Complaint that the Debtor was personally liable for Clary's debts to Ghosh on account of both a pre-existing judgment against her and for damages related to Ghosh's assertion that Clary fraudulently transferred assets to two LLCs. *See* Obj. and accompanying exhibits, 21-24, 27-28. The counts were entitled "Alter Ego" and Ghosh asserted that "the corporate veil should be pierced" with respect to two limited liability companies that were alleged to have received assets fraudulently conveyed by or caused to be conveyed by Clary. *Id.* at 25-27. Ghosh also alleged that Clary and the Debtor each "acted with malice, fraud, gross negligence, or oppressiveness" that caused damage to Ghosh. *Id.* at 24. Notably, in the Default Judgment, the Indiana Court found that "[p]laintiff Michael Ghosh's claims seek a sum certain, as his damages from the tortious actions of [the Debtor] are readily

14

ascertainable from the documentary evidence."[12]   I give no preclusive effect to the findings in the Default Judgment in assessing whether the Debtor had the requisite intent required by § 727(a)(2)(A) or whether Ghosh was a "creditor" at the time he transferred the Kokomo Properties.[13]   Instead, focusing on the nature of the claims and when the "debt-generating event"

---

[12] The Default Judgment, in relevant part, reads:

> Plaintiff Michael Ghosh requests that the Court enter default against Defendant Luke L. Tooley Jr. pursuant to Indiana Rules of Trial Procedure 55(A). It appearing from the record that Defendant Luke L. Tooley Jr. has failed to appear, plead or otherwise defend, the default of Defendant Luke L. Tooley, Jr. is HEREBY ENTERED pursuant to Indiana Rules of Trial Procedure 55(A).
>
> The Court FINDS that Plaintiff Michael Ghosh's claims seek a sum certain, as his damages from the tortious actions of Defendant Luke L. Tooley, Jr. are readily ascertainable from the documentary evidence. The Court therefore GRANTS Plaintiff Michael Ghosh JUDGMENT against Defendant Luke L. Tooley, Jr. in the principal amount of Eighty-Four Thousand Five Hundred Sixty- Seven and 13/100 Dollars ($84,567.13) for violations of the Indiana Uniform Fraudulent Transfer Act, Ind. Code § 32-28-2 et seq., plus interest on the judgment at the legal rate until the judgment is satisfied.
>
> The Court further FINDS that Plaintiff Michael Ghosh is entitled to an award of punitive damages against Defendant Luke L. Tooley, Jr. in the amount of Seventy-Five Thousand and 00/100 Dollars ($75,000.00) for his fraudulent conduct, plus interest on the judgment at the legal rate until the judgment is satisfied.

Compl. Ex. B.   In Indiana, the trial judge has considerable discretion to grant or deny a motion for default judgment, and "the trial court should use its discretion to do what is just in light of the unique facts of the case."  See Delphi Corp. v. Orlik, 831 N.E.2d 265, 267 (Ind. Ct. App. 2005) (internal quotation omitted).   Under Indiana law, the Debtor is "deemed to have admitted whatever allegations of fact are properly pled in the plaintiff's complaint" when a default judgment enters.  Forrester v. Staggs (In re Staggs), 178 B.R. 767, 777 (Bankr. N.D. Ind. 1994).

[13] Although I need not rely on any preclusive effect the Default Judgment may have to determine this objection to discharge, the Default Judgment appears to be an enforceable judgment entitled to full faith and credit.   28 U.S.C. § 1738; Pisnoy v. Ahmed (In re Sonus Networks, Inc., S'holder Derivative Litig.), 499 F.3d 47, 56 (1st Cir. 2007) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)) ("Under the full faith and credit statute … a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered."). The Debtor does not seem to have further rights in Indiana to appeal the Default Judgment and it appears to be final, as the Court of Appeals of Indiana has affirmed the trial court's decision to deny his motion to vacate the Default Judgment pursuant to Trial Rule 60(B)(6).   See Clary-Ghosh v. Ghosh, No. 19A-PL-1541, 2020 WL 2503929, at *5 (Ind. Ct. App. June 20, 2020) (holding the Default Judgment entered

15

occurred that gave rise to those claims, the undisputed evidence shows that the "debt-generating event" occurred prior to the transfers of the Kokomo Properties, and Ghosh was a "creditor" at the time of those transfers.

In sum, the Debtor allegedly participated in a scheme that involved fraudulent conveyances of assets by Clary to MCM, and then fraudulent conveyances from MCM to TCD, an entity that identified the Debtor as its "sole corporate manager." *Id.* at 23-24. This is sufficient to establish a "claim" as contemplated by § 101(5).[14] Under Indiana law, the "debt-generating events" were the transfers of personal property as part of an alleged scheme aided by the Debtor to avoid satisfying a judgment held by Ghosh. These transfers, both from Clary personally to MCM, and thereafter, from MCM to TCD, occurred prior to the Debtor's transfers of the Kokomo Properties and are referenced in the Indiana Amended Complaint.[15] While the

---

against the Debtor valid and that the trial court properly exercised personal jurisdiction over him). In Indiana, a party only has thirty days from the date of entry of an order determining an appeal in which to further appeal, and there is no indication that the Debtor filed a notice of appeal with the Indiana Supreme Court. *See* Ind. R. App. Proc. Rule 9(A)(1). The Debtor does not state that he has any remaining right to appeal the Default Judgment. Suppl. Mem. 2.

[14] Typically, "alter ego" and "piercing the veil" claims would be considered to be requests for equitable remedies to disregard a "corporate" entity for liability purposes. The parties have not briefed when a "claim" would arise in relation to these "counts" in the Indiana Amended Complaint, but it is not apparent that the result would be any different than in relation to a tort claim where the claim against the LLCs (and, thus, allegedly the Debtor) would have arisen at the time of the transfer of assets as part of a scheme to put those assets out of Ghosh's reach.

[15] The Indiana Amended Complaint alleges that Clary transferred various vehicles to MCM from July of 2013 through May of 2015. Obj. and accompanying exhibits, 22-24. On March 15, 2018, MCM was dissolved through a certificate of dissolution filed with the Indiana Secretary of State office, and on July 9, 2018, Clary created TCD, identifying the Debtor as its "sole corporate manager." *Id.* at 24. Then, at an unspecified time concurrent with or before the July 9, 2018 dissolution of MCM, and before the Indiana Amended Complaint was filed on August 28, 2018, those assets were transferred by MCM to TCD. *Id.* The transfer of these assets is when the "debt-generating event" directly traceable to the Debtor occurred.

Debtor has unsuccessfully disputed that he received service of a summons and a copy of the Indiana Amended Complaint in the Indiana courts, as will be discussed below, the Debtor's own testimony at the 341 Meeting is clear that he had actual notice of the claims asserted against him in the Indiana Amended Complaint and transferred the Kokomo Properties because of the lawsuit. For all these reasons, Ghosh was a "creditor" holding a "claim" at the time of the Kokomo Properties transfers within a year of the Petition Date as contemplated by § 727(a)(2)(A). Ghosh's "claim" against the Debtor was ultimately liquidated when the Default Judgment entered on May 1, 2019, prior to the Debtor filing his bankruptcy case.[16]

The Debtor's subjective intent to delay or defraud a creditor is usually a fact-intensive inquiry that cannot be resolved on summary judgment. *See Rowlands v. Fraser (In re Rowlands)*, 346 B.R. 279, 283 (B.A.P. 1st Cir. 2006) ("[i]ssues of intent can rarely be resolved on summary judgment, ..., because all reasonable inferences must be drawn in favor of the nonmoving party, that is, the debtor"). Debtors rarely admit to transferring assets to hinder, delay, or defraud creditors. In this case, there is direct evidence of the Debtor's intent—the Debtor's testimony from the 341 Meeting:

Joseph Baldiga: Why did you transfer the assets into the Trust?

Mr. Tooley: I was getting sued and I couldn't. . .

---

[16] The Debtor makes an undeveloped argument that Ghosh may be judicially estopped from asserting claims against the Debtor because Ghosh only made an "oblique" reference to his claims against Clary in his own bankruptcy schedules and referenced no claims against the Debtor. Obj. 3. The Debtor alleges that Ghosh received a discharge in bankruptcy on June 25, 2016, which order would form the basis for a judicial estoppel argument. *Id.* The transfers underlying the claims in the Indiana Litigation against the Debtor occurred in 2018. Given that the Debtor alleges Ghosh's bankruptcy schedules mention the claims against Clary, and the transfers that are the basis of the Default Judgment occurred after Ghosh received his discharge on June 25, 2016, it is unclear that the Debtor can make any judicial estoppel argument. In any event, the Debtor has not submitted any evidence that would support this argument or referenced anything in the summary judgment record on which I could rely.

17

> Joseph Baldiga: You have got to speak up.
>
> Mr. Tooley: I was getting sued.
>
> Joseph Baldiga: Yup.
>
> Mr. Tooley: And did not want to lose the property.
>
> Joseph Baldiga: So you were getting sued and you didn't want to lose the property. Was that what you said.
>
> Mr. Tooley: Ya.
>
> Joseph Baldiga: So you were doing that to, to stop a creditor from grabbing the assets.
>
> Mr. Tooley: Yes.

Tr. 5.   After being questioned extensively about his schedules, the Debtor affirmed that he intended to keep these assets from Ghosh's reach when he transferred the Kokomo Properties:

> Joseph Baldiga: No, right. You transferred the properties, the two real estate properties, right.
>
> Mr. Tooley: Uh-huh.
>
> Joseph Baldiga: The two houses in Kokomo, into the Trust for no consideration.
>
> Mr. Tooley: Ya.
>
> Joseph Baldiga: Right. And you did that because you were afraid of the properties, this is your testimony from earlier on, that you were afraid of those properties being pursued and attached by Attorney Ghosh, is that correct?
>
> Mr. Tooley: Yup.
>
> Joseph Baldiga: Yes, okay. So the intent was to try to keep them out of Attorney Ghosh's hands.
>
> Mr. Tooley: Yup.

Tr. 61.

There is no conflicting evidence of the Debtor's intent in the summary judgment record. Most notably, the Debtor submitted no affidavit or other evidence of a contrary intent, so I can only evaluate his intent in making the transfers based on the statements made at the 341 Meeting and the surrounding circumstances. As such, it is clear from the Debtor's testimony that he made the transfers with the express intent of protecting the Kokomo Properties from Ghosh's future collection efforts associated with the Indiana Litigation. "Evidence of fraud is conclusive enough to support summary judgment in a § 727(a)(2)(A) action when it yields no plausible conclusion but that the debtor's intent was fraudulent." *In re Marrama,* 445 F.3d at 522. In *Marrama*, the First Circuit Court of Appeals affirmed the bankruptcy court's denial of discharge at the summary judgment stage, in part, because the debtor admitted that he transferred his vacation home to a trust to "protect it," which the Court deemed "an inescapable reference to protection from his creditors." *Id.* at 524. Similarly, the Debtor's stated reason for transferring the Kokomo Properties, that he was "getting sued" and "did not want to lose the property," yields no plausible conclusion other than the Debtor's intent was to hinder and delay Ghosh. *See id.* at 522. The Debtor stated no other purpose for the transfers, did not receive consideration from the Trust, and had knowledge that his assets could be jeopardized by the Indiana Litigation because he acknowledged that he was being sued. *See In re O'Brien,* 190 B.R. 1, 2, 3–4 (Bankr. D. Mass. 1995) (denying debtor a discharge under § 727(a)(2)(A) for actual fraudulent intent based on testimony that he conveyed property "to protect it from creditors."). Based on the summary judgment record, I see no alternative inference that can be made, and the record demonstrates that the Debtor intended to hinder, delay, or defraud Ghosh in his efforts to collect a judgment from the Indiana Litigation. Since there are no genuinely disputed facts material to

19

any of the four elements of § 727(a)(2)(A), Ghosh has met his burden, and summary judgment will enter on Count IV denying the Debtor's discharge.

B. Denial of Discharge Under § 727(a)(4)

Since I have determined that the Debtor will be denied a discharge pursuant to § 727(a)(2)(A), I decline to reach the merits of Count V of the Plaintiff's request to deny the Debtor a discharge for knowingly making false statements under oath.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS the Motion in part and enters summary judgment in favor of the Plaintiff on Count IV, denying the Debtor a discharge pursuant to § 727(a)(2)(A).   Judgment consistent with these rulings will enter.

Dated: March 31, 2022

By the Court,

Christopher J. Panos
United States Bankruptcy Judge